UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TALAAT E. SABRA,

                Plaintiff,

  -v-                                                            No. 04 Civ. 2759 (LTS)(KNF)

JOEL H. SHAFER, BRIAN D. ELLIS,
CITY HEALTH & HOSPITAL CORP.,
and GOUVERNEUR HOSPITAL,

                Defendants.

-------------------------------------------------------x

## M<span style="font-variant:small-caps">emorandum</span> O<span style="font-variant:small-caps">pinion and</span> O<span style="font-variant:small-caps">rder</span>

Talaat E. Sabra, the pro se Plaintiff in this action, is a Muslim Arab of Egyptian nationality. He alleges that New York City Health and Hospitals Corporation and Gouverneur Hospital (collectively, "Defendant" or "HHC") violated his federal and state statutory rights to be free from prohibited discrimination by terminating his employment and failing to remedy a hostile work environment caused by harassment. Joel H. Shafer, the Equal Employment Officer of Gouverneur Hospital, and Brian D. Ellis, the Assistant Director for Labor Relations of three facilities within the South Manhattan Network of the New York City Health and Hospital Corporation, are also named as defendants.

Plaintiff brings statutory claims of race, creed, and national origin discrimination and retaliation invoking, inter alia, Title VII of the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law, among other state law

discrimination causes of action.[1] The Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1334 and supplemental jurisdiction of Plaintiff's state law claims.

Defendants move for summary judgment dismissing Plaintiff's Amended Complaint in its entirety. Defendants' motion papers were accompanied by a Statement pursuant to S.D.N.Y. Local Civil Rule 56.1, as well as a number of evidentiary submissions. Plaintiff's opposition papers lack a responsive Rule 56.1 Statement and consist of argument and unsworn factual assertions. Because, however, there is no evidence in the record that Defendants served a Local Civil Rule 56.2 Statement[2] on Plaintiff with their motion papers, the Court takes Plaintiff's factual allegations (although not the conclusions argued from them) as true in determining whether there are genuine issues of material fact, notwithstanding his failure to put anything in an affidavit or a declaration subject to penalties of perjury. The Court has considered thoroughly all of the parties' submissions and arguments in connection with this motion. For the following reasons, Defendants' motion is granted as to all of Plaintiff's claims, with the exception of his claim that his employment was terminated in retaliation for making complaints of discrimination.

BACKGROUND

---

[1] In his Amended Complaint, Plaintiff purports to base his discrimination claims on violations of N.Y. Pub. Health Law § 2801-a (dealing with the establishment or incorporation of hospitals), N.Y. Pub. Auth. Law § 2642-k (requiring that the Chautauqua, Cattaraugus, Allegany, and Steuben Southern Tier Extension Railroad Authority ensure that applicants for employment be afforded equal opportunity employment prospects), and N.Y. Labor Law § 220-e (prohibiting unlawful discrimination by publically-retained contractors in their employment decisions relating to public construction contracts). As those statutes are facially inapplicable to the factual circumstances of his claims, Plaintiff's Amended Complaint is dismissed to the extent he relies on them.

[2] See S.D.N.Y. Local Civil R. 56.2.

The following material facts are undisputed unless otherwise stated. On or about August 14, 2002, Bruce Higgins, Associate Director of Specialty Services at Gouverneur Hospital, and Minerva Cotrich, Coordinating Manager of the Department of Dentistry at Gouverneur Hospital, interviewed Plaintiff Talaat E. Sabra ("Plaintiff") for employment as a Dental Assistant at Gouverneur Hospital ("Gouverneur"). (Def.'s Rule 56.1 Stmt. ¶ 12.) During the interview, Higgins informed the Plaintiff that HHC would need to conduct a background check on Plaintiff prior to employment, and that HHC performs background checks on all prospective employees, not just the Plaintiff. (Def.'s Rule 56.1 Stmt. ¶ 39.) Upon the recommendation of Mr. Higgins and Ms. Cotrich, on September 24, 2002, Plaintiff was provisionally appointed to the title of Dental Assistant at Gouverneur. (Higgins Decl. ¶ 3; Def.'s Rule 56.1 Stmt. ¶ 13.) On September 23, 2003, Plaintiff received a satisfactory rating on his performance evaluation, which was prepared by Frances Ramos, Assistant Coordinating Manager of the Department of Dentistry at Gouverneur Hospital, and reviewed by Ms. Cotrich. Plaintiff's employment was terminated on November 26, 2003, by Brian D. Ellis, Assistant Director of Labor Relations for HHC.

Plaintiff alleges that, sometime between March and May 2003 (or during the first two months of his employment), he was involved in a work-related argument with Ms. Cotrich, who was by then Plaintiff's former supervisor. (Def.'s Rule 56.1 Stmt. ¶ 16; Rosenthal Aff., Ex. D ¶¶ 17-18.) During the course of this argument, Plaintiff alleges that Cotrich said "[y]ou're arab" or "[b]ecause you are arab" to Plaintiff and then smiled at Ms. Ramos. (Def.'s Rule 56.1 Stmt. ¶ 16.; Rosenthal Aff., Ex. D ¶¶ 16-17.) Plaintiff did not report or file a complaint about this incident. (Def.'s Rule 56.1 Stmt. ¶ 17.)

Plaintiff also alleges that Dr. John Chaung, a dentist at Gouverneur, made several discriminatory comments toward him. These comments included twice asking Plaintiff if he supported Al-Qaeda, and once calling Plaintiff "Sadam." (Rosenthal Aff., Ex. D ¶ 53; Def.'s Rule 56.1 Stmt. ¶ 46, 49.) Plaintiff also alleges that, on one occasion when he was assisting Dr. Chaung, Dr. Chaung discriminated against Plaintiff when, after Plaintiff told Dr. Chaung that he extracted too many teeth and should instead perform root canals, Dr. Chaung said "[b]ut it is not like the butcher of Baghdad." (Def.'s Rule 56.1 Stmt. ¶ 47.)

Moreover, Plaintiff alleges that Dr. Arthur Kalim, a dentist at Gouverneur, discriminated against him on two occasions. The first occasion occurred when the Plaintiff received a phone call and Dr. Kalim said to Plaintiff, "Sabra, immigration is looking for you," in front of co-workers who then laughed. (Rosenthal Aff., Ex. D ¶ 48; Def.'s Rule 56.1 Stmt. ¶ 41.) On the second occasion, several employees were watching a television report on an attempt to shoot the New York City Mayor and Dr. Kalim said "Sabra here?" (Rosenthal Aff., Ex. D ¶ 50; Def.'s Rule 56.1 Stmt. ¶ 42.)

HHC maintains an internal EEO complaint procedure for any employee complaining of discrimination based on several grounds including race, religion, national origin, color and creed. (Def.'s Rule 56.1 Stmt. ¶ 51.) Information regarding HHC's EEO policies and procedures is regularly issued to employees. (Shafer Aff. ¶ 2.) EEO complaints are investigated, typically through review of documents and interviewing witnesses, by the EEO office at the facility or by the HHC central EEO office. (Id. at ¶ 3.) After investigation, a determination is made regarding whether the allegations were substantiated or unsubstantiated. (Id.) If a complaint is substantiated, a variety of actions may be taken, including re-training of employees,

counseling meetings, discipline action, or termination.  (Id.)  On July 10, 2003, Plaintiff filed a complaint with the HHC Equal Employment Opportunity ("EEO") Office, but did not report the incidents involving Dr. Kalim in the complaint.  (Rosenthal Aff., Ex. D ¶ 50; Def.'s Rule 56.1 Stmt. ¶ 40.)

Furthermore, Plaintiff argues that another dental assistant, Evelyn Soto, discriminated against him by asking him questions about the assassination of Egypt's President, including whether the Plaintiff supported those who carried out the assassination.  (Rosenthal Aff., Ex. D ¶¶ 50-51; Def.'s Rule 56.1 Stmt. ¶ 43.)  The Plaintiff also submits that Ms. Soto discriminated against him by listening to Plaintiff while he was making phone calls.  (Rosenthal Aff., Ex. D ¶¶ 50-51; Def.'s Rule 56.1 Stmt. ¶ 44.)  Plaintiff testified in his deposition that, after he filed the July 10, 2003, complaint, Soto did not say or do anything that he believed was discriminatory.  (Rosenthal Aff., Ex. D ¶ 52; Def.'s Rule 56.1 Stmt. ¶ 45.)

Furthermore, Plaintiff argues that Ms. Ramos discriminated against him by scrutinizing his performance more than other employees, and that Mr. Higgins discriminated against him by looking at him worriedly when he saw Plaintiff holding a bag and making a phone call.  (Def.'s Rule 56.1 Stmt. ¶¶ 31, 35.)

Plaintiff's July 10, 2003, EEO Complaint pertained solely to a June 27, 2003, argument between Plaintiff and another dental assistant, Marquita Davis.  (Rosenthal Aff., Ex. D ¶ 47; Def.'s Rule 56.1 Stmt. ¶ 53.)  The complaint alleged that, during the course of the argument, Ms. Davis discriminated against Plaintiff by asking if Mr. Sabra's conduct during the argument was indicative of how women are treated in Plaintiff's country.  (See Rosenthal Aff., Ex. B; Def.'s Rule 56.1 Stmt. ¶ 53.)  Plaintiff's EEO complaint also alleged that another dental

assistant, Camelia Morales, discriminated against Plaintiff by supporting Ms. Davis during the argument with Ms. Morales and by "seizing the opportunities of some political events to pick" on Plaintiff. (Rosenthal Aff., Ex. B.)

Within two weeks of receiving Plaintiff's complaint, Mr. Shafer began an investigation into Plaintiff's charges by interviewing Mr. Sabra, Ms. Cotrich, Ms. Davis, Ms. Morales, and Ms. Ramos. (Rosenthal Aff., Ex. B; Def.'s Rule 56.1 Stmt. ¶ 58.) Plaintiff testified that, after Mr. Shafer spoke with Ms. Davis and Ms. Morales, neither ever referred to his race or national origin again. (Rosenthal Aff., Ex. B at 43; Def.'s Rule 56.1 Stmt. ¶ 66.) On October 6, 2003, Plaintiff was interviewed by an investigator at the Commission on Human Rights regarding alleged ongoing discrimination against him at Gouverneur. (Rosenthal Aff., Ex. C; Pl.'s Mem. Of Law in Opp. to Def.s' Mot. for Summ. J., Ex. 25.) Mr. Shafer received a letter dated November 5, 2003, from Jonathan Jones, Human Rights Investigator for the Commission on Human Rights, City of New York, regarding this interview and requesting that Mr. Shafer investigate Plaintiff's allegations and take appropriate action. (Pl.'s Mem. Of Law in Opp. to Def.s' Mot. for Summ. J., Ex. 25.) On November 25, 2003, a letter was sent to Plaintiff documenting that Shafer's investigation into Plaintiff's complaint was completed and that Plaintiff's complaint of discrimination was unsubstantiated. (Rosenthal Aff., Ex. J; Def.'s Rule 56.1 Stmt. ¶ 70.)

In her interview with Mr. Shafer regarding Plaintiff's EEO complaint, Ms. Ramos told Shafer that she found Plaintiff to be rude to staff and intimidating, and that, during Plaintiff's argument with Ms. Davis, Plaintiff had been pointing his finger in Ms. Davis' face and not letting her talk. (Def.'s Rule 56.1 Stmt. ¶¶ 86-87.) Additionally, Ms. Cotrich, in her

interview with Mr. Shafer regarding the Plaintiff's argument with Ms. Davis, told Mr. Shafer that Plaintiff would perform his assigned duties, but did not get along with female staff including both doctors and doctors' assistants. (Def.'s Rule 56.1 Stmt. ¶ 88.) Similarly, Ms. Morales, in her interview with Mr. Shafer regarding Plaintiff's argument with Ms. Davis, also said that Plaintiff was intimidating. (Def.'s Rule 56.1 Stmt. ¶ 89.)

On July 22, 2003, Dr. Joan Levine, an Endodontist at Gouverneur, submitted a written complaint to Ms. Cotrich regarding Plaintiff. (Def.'s Rule 56.1 Stmt. ¶ 90.) In her complaint, Dr. Levine wrote that Plaintiff had raised his voice during a meeting and "menacingly" pointed at her, "all the while denying his glaring mistakes and blaming other assistants for the troubles he routinely causes." (Rosenthal Aff., Ex. L.) In offering her support for any effort to terminate Plaintiff's employment, Dr. Levine noted that Plaintiff "routinely challenges each request with some nonsensical gibberish as to why he does not think that is the appropriate material or procedure." (Id.) Dr. Levine also wrote "[i]t amazes me, despite reminding [Plaintiff] that I have been practicing for nineteen years without the benefit of his dubious clinical expertise, that he not only shows no signs of acknowledging his shortcomings, but resists acquiring even the most minimal skills." (Id.)

In early August 2003, Ms. Cotrich brought Dr. Levine's complaint to the attention of Mr. Higgins, who instructed Ms. Cotrich not to assign Plaintiff to Dr. Levine any longer. (Def.'s Rule 56.1 Stmt. ¶ 93-94.) When Mr. Higgins then spoke with Plaintiff regarding Dr. Levine's complaint, Plaintiff stated that Dr. Levine was incompetent and that he could not work with her. (Def.'s Rule 56.1 Stmt. ¶ 96.) Mr. Higgins responded that Plaintiff, as a dental assistant with very little experience, was not qualified to judge the competency of an experienced

Endodontist. (Def.'s Rule 56.1 Stmt. ¶ 97.)

On October 29, 2003, Ms. Cotrich and Ms. Ramos called Mr. Higgins to their office and Ms. Ramos told Mr. Higgins that on the previous day Plaintiff had become aggressive toward Ms. Ramos, screaming at her in the hallway in front of other employees and patients. (Higgins Aff. ¶ 15.) In her subsequent report of the incident, Ms. Ramos wrote that, when she had instructed Plaintiff to count and prepare dirty instruments going to sterilization, he became "very hostile and in an aggressive way slammed the cover where the instruments were kept." (Id. at ex. C.) Ms. Ramos' report also stated that another dental assistant sent to help Plaintiff immediately returned and told Ms. Ramos that Plaintiff had told her "I don't need your help" in an aggressive manner. (Id.) According to Ms. Ramos' report, Plaintiff returned to Ms. Ramos' office after fifty minutes and, in the presence of three other dental assistants, began yelling at her, pointing his finger in her face, and waiving papers in her face. (Id.) In her report, Ms. Ramos wrote "Mr. Sabra is unreceptive and after several incidents similar to this one, I fear for my safety." (Id.) At the direction of Mr. Higgins, the three dental assistants who witnessed the incident – Evelyn Soto, Gladys Hernandez, and Cynthia Villegas – also provided statements describing the October 28, 2003, incident involving Plaintiff. (Def.'s Rule 56.1 Stmt. ¶ 105.)

On October 31, 2003, Ms. Cotrich sent a memo to Mr. Higgins referencing incident reports relating to the Plaintiff's conduct on October 28, 2003. (Rosenthal Aff., Ex. Q.) Attached to Ms. Cotrich's memo were two memos addressed to Plaintiff relating to two separate warnings he had received for failing to comply with the dress code and the complaint from Dr. Levine. In her memo, Ms. Cotrich wrote that "Sabra has established a pattern of this behavior which is unacceptable to the operations of the Dental Clinic." (Id.) Mr. Higgins subsequently

recommended to Ms. Cotrich that disciplinary action against Plaintiff should be taken. (Higgins Aff. ¶ 17.)

On November 6, 2003, Plaintiff received a warning notice from Ms. Cotrich and was directed to report to Mr. Higgins to attend a counseling session on November 14, 2003. (Def.'s Rule 56.1 Stmt. ¶ 108.) On or about November 12, 2003, union representatives met with Plaintiff's co-workers and Ms. Cotrich and, at the request of the union representing Plaintiff, Plaintiff's counseling session was postponed indefinitely. (Id. at ¶ 109.) Following the indefinite postponement of Plaintiff's counseling session, Mr. Higgins contacted Mr. Ellis, described the complaints against Plaintiff and the indefinite postponement of Plaintiff's counseling by Plaintiff's union, and sought Mr. Ellis' advice concerning how to proceed with regard to Plaintiff. (Id. at ¶ 114.) Mr. Ellis then reviewed Plaintiff's personnel file, decided that a counseling session was not going to improve the situation, and determined that Plaintiff should be discharged. (Id. at ¶ 117.) Mr. Ellis then spoke with Mr. Higgins, who agreed with his decision to discharge Plaintiff. (Id. at ¶ 118.) Plaintiff received a letter of termination from Mr. Ellis on November 26, 2003. (Id. at ¶ 119.)

Defendants submit that, during the time period in which the determination to terminate Plaintiff was made, neither Mr. Ellis nor Mr. Higgins knew of Plaintiff's complaints to HHC's EEO office, the City Commission on Human Rights or any similar body. (Id. at ¶ 120.) In his deposition, however, Plaintiff alleges that Mr. Higgins informed him that he was disciplined and terminated because of his complaint to the New York City Commission on Human Rights. (Rosenthal Decl., Ex. D, at 73.) In early December 2003, Plaintiff contacted Mr. Ellis and explained that he felt he had been treated unfairly during his employment and that the

complaints in his file were inaccurate depictions of the events documented. (Id. at ¶¶ 122-123.) It was during this meeting that Mr. Ellis first became aware of Plaintiff's complaints filed with HHC's EEO office and the New York City Commission on Human Rights. (Ellis Aff. at ¶ 13.) Following his meeting with Plaintiff, Mr. Ellis again reviewed Plaintiff's case, reviewing all relevant documents, communications, and speaking personally with Ms. Cotrich, Mr. Higgins, and Ms. Ramos, who all recommended that Plaintiff not be rehired. (Id. at ¶ 20; Def.'s Rule 56.1 Stmt. ¶ 124.) Based on this investigation, Mr. Ellis decided not to reinstate Plaintiff. (Ellis Aff. at ¶ 20.)

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586-87 (1986) (alteration in original)).  "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment.  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

      Plaintiff's Title VII Claims as to the Individual Defendants

The Court grants Defendants' summary judgment motion as to Plaintiff's Title VII claims against the individually named defendants since it is well settled that only the employer, and not the employer's employees, may be held liable under Title VII.  Tomka v. Seiler, 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

      Wrongful Termination

Plaintiff's Amended Complaint alleges that he was wrongfully terminated due to Gouverneur Hospital's animus against him on the basis of his race, religion, and national origin, or in retaliation for his earlier complaints of discriminatory acts and comments by employees of Gouverneur Hospital.  Title VII discrimination and retaliation claims are analyzed under the three-step burden shifting analysis established in McDonnell Douglas Corp. v Green, 411 U.S. 792, 802 (1973).[3]

In the context of a motion for summary judgment, a plaintiff must first proffer evidence sufficient to establish a prima facie case of prohibited discrimination or retaliation.  McDonnell Douglas Corp., 411 U.S. at 802.  The burden of establishing a prima facie case in

---

[3] Plaintiff's discrimination claims under the NYSHRL are subject to the same standard of proof as claims under Title VII.  See Cruz v. Coach Stores, Inc., 202 F. 3d 560, 565 n.1 (2d Cir. 2000).

employment discrimination cases is minimal. McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). To establish a prima facie case of race, religion, or national origin discrimination, Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. McDonnell Douglas Corp., 411 U.S. at 802; Schnabel v. Abramson, 232 F.3d 83, 87 (2000). Once a plaintiff has made out a prima facie case, the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions. McDonnell Douglas Corp., 411 U.S. at 802. An employer sustains its burden "by producing any evidence of nondiscriminatory reasons, whether ultimately persuasive or not." Weeks v. N.Y. State Div. of Parole, No. 00 Civ. 5865 SJ, 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). "The employer need not prove by a preponderance of the evidence that the reasons for his actions were not discriminatory, but may simply present clear and specific reasons for the action." Gibbs v. Consol. Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89 (S.D.N.Y. 1989) (internal quotations omitted). If the employer meets its burden, a plaintiff is required to show that the defendant's stated reason is a pretext for the prohibited discrimination. Schnabel, 232 F.3d at 88.

"To make out a prima facie case of retaliation, an employee must show that he was engaged in a protected activity; that he suffered an adverse employment decision; and a causal connection between the protected activity and the adverse employment decision." Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988). Protected activity in this context includes formal as well as informal complaints. See Rodriguez v. Beechmont Bus Serv., Inc., 173 F. Supp. 2d 139, 149 (S.D.N.Y. 2001). "A plaintiff can demonstrate a causal connection (a)

indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." See Carr v. West LB Admin., Inc., 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)). Once a prima facie case has been made out, the burden shifts to the defendant to come forward with some nondiscriminatory reason for the adverse employment action. If the defendant satisfies his burden, the plaintiff may rebut the defendant's non-discriminatory reason with evidence demonstrating that the reason proffered by the defendant is a pretext for discrimination.

### Plaintiff's Prima Facie Case

The record is sufficient to make out Plaintiff's prima facie claim of race, religion, and national origin discrimination with respect to his termination. Defendants concede for the purpose of this motion that, with regard to his discrimination claim, Plaintiff is a member of a protected class and that his termination constituted an adverse employment action. Plaintiff meets his burden with respect to the qualification and inference of discrimination prongs by proffering evidence that he received a "Satisfactory (standard)" job performance rating in both the "Overall Evaluation" category and every individual performance category of his performance evaluation. (Plaintiff's Mem. of Law in Opp. to Def.'s Mot. for Summ. J., Ex. 5 ("Plaintiff's Memo").) The performance evaluation was completed on September 23, 2003, approximately two months prior to Plaintiff's termination. The evaluation was prepared by Ms. Ramos and reviewed by Ms. Cotrich. (Plaintiff's Memo, Ex. 5). Accordingly, the record is sufficient to establish Plaintiff's prima facie case of wrongful termination.

The record is also sufficient to establish a <u>prima</u> <u>facie</u> retaliation case. Plaintiff alleges retaliation for his HHC EEO discrimination complaint filed on July 10, 2003, and his complaint to the City of New York Commission on Human Rights regarding the same incident and a lack of an effective corrective response on the part of Mr. Shafer. Given the close temporal relationship between the letter to Mr. Shafer from Mr. Jones, Human Rights investigator, on November 5, 2003, the letter from Mr. Shafer to Plaintiff on November 25, 2003, stating that the investigation into complaint of discrimination was unsubstantiated, and Plaintiff's termination the following day, the record could support an inference of a causal connection between the protected activity and the adverse employment action against Plaintiff.

<u>Defendants' Proffered Reasons</u>

Defendants in response proffer evidence that Plaintiff's termination was based on their conclusions as to his workplace performance and was not retaliatory. With respect to Plaintiff's discrimination claim, Defendants offer testimonial and documentary evidence of several incidents of Plaintiff's insubordination and hostility toward both supervisors and coworkers. These include a written complaint dated July 22, 2003, by Dr. Levine stating that Plaintiff challenged her judgment as to what materials were necessary and what procedures to perform, that Plaintiff raised his voice toward her and pointed menacingly during a meeting while denying mistakes he had made, and that Plaintiff routinely blamed others for his mistakes. (Rosenthal Dec., Ex. L.) Defendants also tender evidence that Plaintiff received warning notices on both October 21, and October 22, 2003, for failing to comply with the dress code. (Rosenthal Dec., Exs. M, N). In addition, Defendants proffer a written report by Ms. Ramos and statements of three dental assistants to the effect that, on October 28, 2003, following Plaintiff's assignment

by Ramos to count and prepare dirty instruments for sterilization, Plaintiff yelled at Ms. Ramos that the assignment was unfair, and ignored Ms. Ramos' suggestions that he calm down, waving papers in her face and continuing to be argumentative. (Rosenthal Dec., Exs. O, P.) Ms. Ramos' report also states that another dental assistant whom she had sent to assist Plaintiff returned nervous and upset and told her that Plaintiff was very hostile and aggressive toward her and refused her help. (Id., Ex. O.) Ramos' report notes several other similar incidents. (Id.)

As noted above, Defendants proffer that the final decision to terminate the Plaintiff was made by Mr. Ellis, after discussion with Mr. Higgins. In making this determination, Mr. Ellis interviewed Plaintiff's co-workers, reviewed the related written reports about morale problems within the department caused by Plaintiff's behavior, and reviewed Plaintiff's file, which included records of the above incidents. (Ellis Dec., ¶¶ 5-9.) This uncontroverted evidence is sufficient to rebut Plaintiff's prima facie charges of discrimination and retaliation.

<u>Plaintiff Has Failed to Raise a Triable Issue as to Discrimination Pretext</u>

Plaintiff has failed to come forward with evidence demonstrating that the reasons proffered by Defendants are a pretext for discrimination. In conclusory statements, and without proffering any specific information as to persons allegedly treated differently, Plaintiff asserts that there was a broad conspiracy, orchestrated by Mr. Higgins and Ms. Cotrich out of discriminatory animus and carried out by Ms. Cotrich, Ms. Ramos, and other dental assistants, to get him terminated. (Plaintiff's Memo at ¶¶ 23-29.) At the summary judgment stage, such vague and conclusory assertions are insufficient to present a genuine issue of material fact as to whether the proffered reasons are a pretext for prohibited discrimination or for retaliation. See <u>Cifarelli v. Vill. of Babylon</u>, 93 F.3d 47, 51 (2d cir. 1996) (holding that "mere conclusory allegations,

speculation or conjecture will not avail a party resisting summary judgment"). Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's discrimination claim.

Retaliation Claim

As to the retaliation claim, again taking the facts in the light most favorable to the non-movant, a statement in Plaintiff's March 31, 2005, deposition is sufficient to frame a genuine issue of material fact as to whether the termination was retaliatory. Specifically, Plaintiff alleges that Mr. Higgins informed him that he was terminated because of his complaint of discrimination to the New York City Commission on Human Rights. (Rosenthal Dec., Ex. D, at 73.) Accordingly, Defendants' Motion for Summary Judgment is denied as to Plaintiff's retaliation claim against the hospital and agency Defendants, and as to his state law retaliation claim against Defendant Ellis, who, according to Defendants, made the termination decision. The retaliation claim will be dismissed as against Defendant Shafer, as there is no evidence that he was involved in the allegedly retaliatory termination.

Hostile Work Environment

In order to establish a <u>prima</u> <u>facie</u> claim of a hostile work environment, a plaintiff must demonstrate that "the workplace is so permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). A plaintiff must show not only that he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. <u>Hayut v. State Univ. of N.Y.</u>, 352 F.3d 733, 745 (2d Cir. 2003).

Harassment is objectively hostile and abusive where a reasonable employee would find that the harassment altered the conditions of the work environment for the worse. Torres v. Pisano, 116 F.3d 625, 631 n.4 (2d Cir. 1997). Courts examining hostile work environment claims look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. Isolated instances of harassment ordinarily do not rise to the level of a hostile work environment. See Markus v. Teachers Ins. & Annuity Assoc., No. 03 Civ. 646, 2005 WL 742635, *8 (S.D.N.Y. Mar. 29, 2005) (citation and quotation marks omitted).

Plaintiff's claim of hostile work environment fails as a matter of law, primarily because no rational fact-finder could conclude that the mistreatment Plaintiff allegedly endured was sufficiently severe or pervasive to alter the conditions of his employment and create an unlawfully abusive working environment. Plaintiff only filed one complaint with Governeur's EEO Office. That complaint, dated July 10, 2003, charged only two co-workers, Ms. Davis and Ms. Morales, with discrimination regarding an incident on June 27, 2003, in which Plaintiff got into an argument with several co-workers. (Plaintiff's Mem., Ex. 26.) The complaint alleged that, during the course of the argument, Ms. Davis discriminated against Plaintiff by asking if Mr. Sabra's conduct during the argument was indicative of how women are treated in Plaintiff's country. (See Rosenthal Aff., Ex. B; Def.'s Rule 56.1 Stmt. ¶ 53.) Plaintiff's EEO complaint also alleged that another dental assistant, Camelia Morales, discriminated against Plaintiff by supporting Ms. Davis during the argument with Ms. Morales and by "seizing the opportunities of some political events to pick" on Plaintiff. (Rosenthal Aff., Ex. B). In his EEO complaint,

Plaintiff makes no mention of the comments allegedly made by Doctors Chaung and Kalim, nor any other discriminatory comments or actions toward Plaintiff by any other dentists.

        The alleged comments and actions of Ms. Cotrich, Mr. Higgins, Ms. Soto, Ms. Morales, and Ms. Davis, as detailed above and which Plaintiff claims contributed to create a hostile work environment, do not, as a matter of law, whether viewed individually or as a whole, rise to the requisite level of discriminatory intimidation, ridicule, or insult and thus cannot establish a viable hostile work environment claim. Additionally, while the comments and jokes made by Doctors Chaung and Kalim were inappropriate, they do not, whether considered individually or together with the other allegedly abusive conduct, rise to the level of severe or pervasive abuse necessary to establish a claim of hostile work environment. See Schwapp v. Town of Avon,118 F.3d 106, 110 (2d. Cir. 1997) (holding that "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few incidents of racial enmity"); Smith v. Niagara Frontier Transp. Auth., No. 03 Civ. 548, 2007 WL 1119797, * 6 (W.D.N.Y. Apr. 16, 2007) (finding insufficient evidence to raise a genuine issue of material fact where plaintiff was subjected to occasional derogatory racial comments and slurs.) Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's hostile work environment claim.

## CONCLUSION

        For the foregoing reasons, Defendants' motion for summary judgment is denied as to Plaintiff's retaliation claim against Mr. Ellis and the hospital and agency defendants, and granted as to all defendants with respect to Plaintiff's discrimination and hostile work environment claims.

The parties shall meet promptly with Judge Fox for settlement purposes and, if no settlement is concluded, work with Judge Fox to reschedule the final pre-trial conference and address the related submission requirements. The July 25, 2008, final pre-trial conference is adjourned sine die, pending the parties' consultations with Judge Fox.

This Memorandum Opinion and Order resolves docket entry no. 32.

SO ORDERED.

Dated: New York, New York
July 17, 2008

LAURA TAYLOR SWAIN
United States District Judge